M. W. OVERFELT v. OSCAR VINSON ET AL.

Decided May 11, 1907.

**School Lands—Occupancy—Forfeiture.**

Under the provisions of the law concerning the purchase of school land, actual occupancy of the land is required. There can be no constructive occupancy. Evidence considered, and held to support a finding that a purchaser of school land had failed to comply with the requirements of the law in the matter of occupying the land purchased, and had thereby forfeited his right to the same..

Appeal from the District Court of Dickens County. Tried below before Hon. J. M. Morgan.

*Holman & Dickson,* for appellant.

*Glasgow & Green,* and *Wilson, Dalton & Wilson,* for appellees.

SPEER, ASSOCIATE JUSTICE.—Appellant instituted this suit in trespass to try title to recover from Oscar Vinson and wife two sections of school land, and from an adverse decision has prosecuted this appeal. The trial court's findings of fact are as follows:

"1st. I find that Mrs. Vinson, formerly Miss Maud Hudson, who first filed on the land in controversy, was an actual settler at the time she made her application to purchase the said land, in that the plaintiff wholly failed to prove that she was not such actual settler.

"2d. I find that the plaintiff, M. W. Overfelt, was not an actual settler on the land in controversy at the time of his application to purchase the same, and never became such until July 17, 1905.

"3d. I find that defendant, Miss Hudson, after plaintiff had put what he put in the dugout, put his things on the outside where he afterwards found and took them away. I further find that the defendant said nothing about the plaintiff being barred out, as to his things, but told the plaintiff that they were willing to let the law take its course in regard to their dispute over the land and he told them he was willing to leave it to the law and they said they were willing, and plaintiff afterwards on January 22, 1905, took his things away from there.

"4th. In answer to plaintiff's request for findings, which is as follows: 'Could plaintiff under the facts have regained possession without resort to unlawful force,' the court finds as a fact that the defendants never threatened the plaintiff and never offered to do him serious bodily injury, and as to whether he could have gained possession of the premises without resort to unlawful force, the court is unable to say. He could not have gained possession of the dugout after it was locked without the use of force.

"5th. I find that the plaintiff had no reasonable ground to fear bodily injury if he should force his re-entrance and remain on the premises after the defendants had taken exclusive and hostile possession, because I find from the evidence that every conversation

he had with them was friendly and he and they said they would leave it to the law.

"6th. I further find that the defendant by virtue of her award was an actual settler at the time of her application to purchase the land in controversy, in that the plaintiff in this case did not show that she was not such actual settler.

"7th. I further find that the plaintiff was not an actual settler on the land in controversy at the time he made his application for the land, and I further find that if he was when he made his application that he abandoned the same on 13th day of January, 1905, and never went back on the land as a settler until the 17th of July following.

"8th. I further find as a matter of law that the defendant was entitled to recover the land.

"9th. I further find that the plaintiff is not entitled to recover the land.

"10th. I further find that the plaintiff did not occupy the land from the 13th day of January, 1905, to the 17th day of July, 1905, as a home or otherwise, and therefore he was no actual settler on the land, and during that time he had no reasonable ground to fear death or serious bodily injury, and, he being absent more than six months continuously, the court holds that he forfeited his right, if he ever had any, and the same was not excused by him going off and working to pay for the land."

In order to reverse the judgment of the trial court we must be able to overturn his findings upon the three important points of appellees' settlement, appellant's settlement and appellant's forfeiture by reason of his failure to reside upon the land. This we are unable to do. The seventh and tenth findings of fact are to the effect that if appellant was ever an actual settler on the land in controversy he abandoned the same, which resulted in its forfeiture and is fatal to his right to recover herein. It is provided in section 3 of the Public Lands Act of 1901 that "if any purchaser shall fail to reside upon and improve in good faith the land purchased by him, as required by law, he shall forfeit said land and all payments made thereon to the State, to the same extent as for the non-payment of interest, and such land shall be again upon the market as if no such sale and forfeiture had occurred, and all forfeitures for nonoccupancy shall have the effect of placing the land upon the market without any action whatever on the part of the Commissioner of the General Land Office, and if any purchaser shall be forced to yield possession of the land purchased by him from the State on account of any writ or other judicial process issued from a court of competent jurisdiction, or be compelled to temporarily yield his possession from a well grounded fear of death or serious bodily injury, such absence shall not work the forfeiture provided by law for nonoccupancy." If article 4218-1, Sayles' Texas Civil Statutes (Act of 1897), authorizing all necessary and temporary absence from such land of such purchaser for the purpose of earning money with which to pay for the land, etc., be applicable, still the court's finding is that the absence of appellant exceeded

the permitted time; that is, from January 13, 1905, to July 17 following.

The evidence was such as to authorize the court's finding. Appellant, who in attempting to settle on the land moved his household and kitchen effects into a dugout, left the land on January 13, 1905, for the purpose of going to Guthrie after his mail. On his return to the dugout he found appellees in possession. Appellees said they were there to stay, and the parties mutually and good naturedly agreed to leave the matter to the law. On January 22 appellant removed his property, which had in the meantime been thrown out of the dugout, and made no further effort to occupy the land until July 17. Appellees made no threats of any character whatever against appellant and the testimony leaves little room for doubt that he entertained no fear of death or serious bodily injury at their hands. Under such circumstances his failure to reside upon the land necessarily worked a forfeiture of his claim. It is not a question of intention on his part such as would determine the exempt character of property claimed as a homestead under our homestead law, but it is a question of actual occupancy as contradistinguished from constructive occupancy. See Andrus v. Davis, 89 S. W. Rep., 772. So that affirming, as we do, the court's finding upon this issue, it becomes unnecessary to pass upon the other findings. The judgment of the trial court is therefore affirmed.

*Affirmed.*

Conner, Chief Justice, not sitting.